ORIGINAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ACC CONSTRUCTION CO., INC. | * | |
| Plaintiff, | * | 07-379 C |
| v. | * | CIVIL ACTION NO. |
| UNITED STATES OF AMERICA, | * | |
| Defendant. | * | |

FILED
JUN 14 2007
U.S. COURT OF FEDERAL CLAIMS

**COMPLAINT**

ACC CONSTRUCTION CO., INC. ("ACC") respectfully presents this Complaint against the United States of America as follows:

**PARTIES AND JURISDICTION**

1. On March 8, 2005, ACC contracted with the United States of America, through the U. S. Department of the Army (the "Army"), to perform work at England Air Park in Alexandria, Louisiana (the "Project") under Contract W9126G-05-C-0006 (the "Contract").

2. The Project was for construction of a Passenger Processing Facility ("PPF"), a Pallet Shelter, certain work related to separate existing Building Nos. 1707 and 1711, and other ancillary work that would allow beneficial use of the facilities.

3. ACC prepared its proposal in anticipation of a performance period of 450 or more days to complete all work. ACC anticipated using all of that time to construct the PPF. The Army (construction personnel, not the Contracting Officer (the "CO")) asserted that the performance time to construct the PPF was only 360 days. ACC, soon after award, requested a written, binding interpretation from the CO regarding this apparent discrepancy. The CO did not take a written decision for more than one year; however, the Army refused to pay ACC unless and until it revised its schedule and work

procedures to construct the PPF within 360 days. In addition, the Army has withheld earned funds in anticipation of an assessment of liquidated damages ("LDs").

4. By letter dated October 27, 2005, ACC submitted a claim demanding an interpretation from the CO of the contractual duration for construction of the PPF. The letter requesting the CO's decision is more fully detailed in letters dated November 21 and December 22, 2005. True and correct copies of these three letters are attached hereto and incorporated herein as Exhibits A-1, A-2, and A-3, respectively.

5. In a letter dated June 16, 2006, the CO rendered a written decision on the claim. A true and correct copy of the decision received by ACC is attached hereto and incorporated as Exhibit A-4.

6. By filing this Complaint, ACC has appealed the denial of its claim within the time period provided under the Contract Disputes Act.

7. This Court has jurisdiction over this dispute in accordance with the Tucker Act (28 U.S.C. § 1491) and the Contract Disputes Act (41 U.S.C. § 601, *et seq.*).

**PPF CONSTRUCTION PERFORMANCE DURATION**

8. ACC realleges and incorporates as if fully set forth herein the averments set forth above in paragraphs 1 through 7.

9. The initial solicitation, a Request for Proposals (the "RFP") to be evaluated pursuant to negotiations, specified that all work, except turf and landscaping work, would be completed in no more than 490 days.

10. ACC submitted the only proposal in response to the RFP. In its proposal, ACC, in addition to pricing terms, offered to complete all work in 490 days by entering that number of days on a blank line on the Government-prepared "BIDDING SCHEDULE' under Contract Line Item No. 0008 ("CLIN No. 0008"). As a part of its

proposal, ACC also submitted a preliminary schedule showing work at the PPF continuing over a period of more than sixteen (16) months. CLIN No. 0001 concerned the PPF.

11. The Army amended the RFP to specify that all work would be completed in no more than 450 days, consisting of time phases. All work except work at Building Nos. 1707 and 1711, "hardstand" around the buildings, and turf and landscaping work was to be completed in 360 days. Work at Building Nos. 1707 and 1711 and hardstand was to be started after completion of the PPF and Pallet Shelter and was to be completed in 90 days. Turf and landscaping work had no specific completion time.

12. In response to the amendment, ACC proposed a 450-day performance period at CLIN No. 0008. ACC did not amend its previously proposed preliminary schedule showing work continuing over a period of more than sixteen (16) months. That proposed schedule indicated PPF work activities that were scheduled to be performed more than 360 days after the start of work. The Army did not reject or object to ACC's amended proposal. The proposed price for CLIN No. 0001 was not changed by ACC.

13. The Army further amended the RFP to delete all work at Building Nos. 1707 and 1711, which was the principal work that was to have been completed in the 90-day phase of the 450-day performance period.

14. ACC revised and reduced its price proposal by deleting proposed amounts for CLINs related to Building Nos. 1707 and 1711. However, ACC did not revise its 450-day time proposal, its preliminary proposal schedule, or its proposed price for CLIN No. 0001. ACC specifically relied on having 450 days to complete all work remaining in the RFP and the proposal, except turf and landscaping work. ACC negotiated with the CO and other Army contracting personnel to that end. ACC understood that the CO and

other Army contracting personnel agreed with ACC concerning a performance period of 450 days within which to construct the PPF.

15. The CO awarded Contract No. W9126G-05-C-0006 based on ACC's revised proposal. The award document was Standard Form ("SF") 1442 which includes Item No. 21, "ITEMS ACCEPTED" and a blank area on the form wherein the Army typed the following:

> Items 0001, 0002, 0005AA, 0005AB, 0005AC, 0006AA, 0006AB, 0006AC, 0007, 0008, 0009, 0010, and the contractor's technical proposal, all revisions thereto including construction duration of 450 calendar days after receiving Notice-to-Proceed as amended Amendments 0001 thru 0007 are accepted as part of the awarded contract.

16. The CO forwarded the award document, SF 1442, to ACC under a cover letter dated March 8, 2005. The cover letter reads as follows, in relevant part:

> Your revised bid dated March 7, 2005 in the amount of $11,218,876.92, Line Items 0001, 0002, 0005AA, 0005AB, 0005AC, 0006AA, 0006AB, 0006AC, 0007 thru 0010, all revisions thereto including construction duration of 450 calendar days after receiving the Notice to Proceed, and Amendments 0001 thru 0007, under solicitation W9126G-05-R-0001, Passenger Processing Facility, England Air Park, Alexandria, Louisiana is accepted.

17. ACC reasonably believed that the contract, as awarded, provided 450 days within which to construct the PPF. At the preconstruction conference, ACC expressed that view to Army personnel, not the CO, assigned to a construction surveillance office near the site of the work ("local Army personnel").

18. When it became apparent that local Army personnel took issue with ACC's planned 450-day performance period, ACC began requesting written direction from authorized Government contracting officials regarding the extent to which there was disagreement.

19. In letters from ACC to Army personnel, dated May 31, and September 15, 2005, ACC requested an authoritative interpretation of the contract.

20. By letters dated October 27, November 21, and December 22, 2005, and March 10, and April 25, 2006, ACC requested the CO's interpretation of the contract and the CO's decision regarding the matter of the contract performance period.

21. In the interim, the CO at time of award and with whom ACC had conducted pre-award negotiations, retired from Government service.

22. A successor CO, in a decision dated June 16, 2006, well after completion of either a 360-day or a 450-day performance period, opined that the performance period for construction of the PPF was 360 days. This decision is erroneous as a matter of fact and law.

23. The CO has authorized the withholding of earned funds in anticipation of assessing liquidated damages. Accordingly, ACC has been and continues to be prejudiced and damaged financially by the failure of the CO to publish a written decision sooner and by erroneously contradicting the CO making negotiation decisions at time of award.

24. ACC is entitled to complete the PPF within 450 days without forfeiture of LDs.

25. ACC is entitled to a judgment that the contract performance period, including the time allowed to construct the PPF, is 450 days.

WHEREFORE, ACC respectfully requests the following relief:

a) That this Honorable Court correctly interpret the contract, as awarded, to allow 450 days to construct the PPF;

b) that the Court render a judgment awarding to ACC any funds being withheld in anticipation of an assessment of LDs on account of the Government's incorrect contract interpretation; and

c) that the Court render in its judgment an award of interest, pursuant to the Contract Dispute Act, on money improperly withheld in anticipation of an assessment of LDs on account of the Government's incorrect contract interpretation, amounts of which will be proved at trial.

Respectfully submitted this 13th day of June, 2007.

By: ______________________

Karl Frederick Dix
Georgia Bar No. 223235
Admitted to the Bar
of The United States
Court of Federal Claims
Attorney for Plaintiff
**ACC CONSTRUCTION COMPANY**

**SMITH, CURRIE & HANCOCK LLP**
2700 Marquis One Tower
245 Peachtree Center Avenue, N.E.
Atlanta, GA 30303-1227
(404) 521-3800 Telephone
(404) 688-0671 Facsimile

#10

October 27, 2005

U. S. Army Corps of Engineers, Eastern Area Office
P.O. Drawer 3919
Fort Polk, LA 71459-0919

ATTN: Warren E. Sayes

*RE:* ***PASSENGER PROCESSING FACILITY***
***ENGLAND AIR PARK ALEXANDRIA, LOUISIANA***
***W9126G-05-C-0006***
***LETTER #: H00049***

Dear Mr. Sayes:

Thank you for your letter of October 14, 2005 and again I must disagree with your logic. First let me point out that block 21 of the SF 1442 also makes the contractor's technical proposal part of the contract. Enclosed you will find our proposed schedule which is for a duration of 490 days and does not show any deviation between the work at the new buildings and building 1707 and 1711.

Our revised proposal agreed to 450 calendar days in lieu of the 490 days per box 21 of the proposal. We have asked for on numerous occasions asked to meet with Valerie Sands, Mr. Tuttlebee, or Mr. Buford to discuss the post bid discussions that were held. We have also asked for a copy of the contract file and all correspondence in this file. Again I request these documents under the Freedom of Information Act.

We naturally wish a contracting officer's decision as your interpretation is not as was presented to get this job awarded. Please advise when we can expect to see these documents and talks with these personnel.

Sincerely,

ACC CONSTRUCTION CO.

Will McKnight
Senior Project Manager

WMCK:scl

cc: Jobsite
Karl Dix
Andy Tarver
337-531-2560
(Original and 3 copies to owner)

(30)

EXHIBIT
A-1

EXHIBIT A-2

November 21, 2005

Corp. of Engineers
P.O. Drawer 3919
Ft. Polk, LA 71459-0919
Attn: Warren E. Sayes

***RE: Passenger Processing Facility***
***England Air Park, Alexandria, LA***

Gentlemen:

I was shocked when my brother, Will McKnight came into my office and asked me to speak to you about the duration of the building of bid item 001 Passenger Processing Facility, 0002 Pallet Shelter, 0005AA 16" concrete piles, 0005AB pile load test, 0005AC pile withdrawals, 007 all exterior work. Below are the facts concerning the understanding that I had and John Engler had with Mrs. Valerie J. Sands that the duration was to be 450 days.

1. Original bid January 20, 2005

2. Review bid February 9, 2005 with schedule- Please note that item 7180, bid item 0006AA,0006Ab, and 0006AC, redo old concrete was to be done in September 05, approximately 180 to 210 days after NTP; that concrete paving (site work bid item 0007, which goes around the PPF) was to be done end of March 2006 to mid May 2006, approximately 390 to 440 days after NTP.

3. Negotiations were held with ACC; myself at the home office and John Engler ( John Engler went to the Fort Worth district office) which generated addendum # 7 which omitted bid item # 3 renovate building 1707 and bid item 004 renovate building 1711 vehicle wash facility. While this negotiation was going on and since there was no work left to be complete in the time table from 360 days to 450, and related work I asked Mrs. Valerie J. Sands to let the time for the Passenger Processing Facility and related work run from 360 days to 450 days when addendum # 7 came out there was no new bid form. ACC returned the letter dated March 7, 2005 to Arthur Tuttlebee with the revised bid omitting item 3 and item 4 and the time for all remaining bid items ( 001,002,005AA,005AB,005AC,006AA,006AB,006AC,007) to be 450 days.

4. ACC received on March 14, 2005 a letter dated March 8, 2005 from Mrs. Valerie Sands stating that the above job was awarded to ACC. In this letter the first sentence in the first paragraph states "Your revised bid dated March 7, 2005 in the amount of $11,218,876.92. Line Items 0001,0002,0005AA,0005AB,0005AC,0006AA,0006AB,0006AC,0007 thru 0010, all revisions thereto including construction duration of 450 calendar days after receiving the Notice to Proceed,

and Amendments 001 thru 0007, under solicitation W9126G-05-R-0001, Passenger Processing Facility, England Air Park, Alexandria, Louisiana is accepted." In reading this along with my negotiations with Mrs. Sands:

5. The contract state that line items 0001, 0002, 0005AA, 0005Ab, 0005AC, 0006AA, 0006AB, 0006AC, 0007 thru 0010, all revisions thereto including construction duration of 450 calendar days after receiving Notice to Proceed. If all the bid items stated above do not have a duration of 450 calendar days then why didn't it state so in this letter? It is ACC's position that while negotiating with Mrs. Valerie J. Sands that the contract was awarded with all bid items having a duration of 450 days. If you do not agree with this then I request a contracting officers decisions as soon as possible. I will be glad to come to the jobsite the week of November 28, 2005 ( except Tuesday, 11-29-05) to discuss this.

If there are any questions, please call me.

Sincerely,

***ACC CONSTRUCTION CO., INC.***

Mason McKnight, III
President

MMCK:sdr

cc: Jobsite
Kari Dix-Smith,Currie & Hancock
Will McKnight

#11

December 22, 2005

Corp of Engineers
P.O. Drawer 3919
Ft. Polk, LA 71459-0919
Attn: LuVette Buford

***RE:*** ***Passenger Processing Facility***
***England Air Park, Alexandria, LA***
***W9126G-05-C-0006***
***H0070***

Gentlemen:

Please be advised that ACC sent a letter to Warren Sayes on November 21, 2005 regarding the duration of this job. We have not received any answer or direction to this letter. As of now, there is no costs involved in this negotiation. We are requested a Contracting Officer's decision on this matter as soon as possible.

Sincerely,

*ACC CONSTRUCTION CO., INC.*

Mason McKnight
Project Manager

MMCK:sdr

cc: Jobsite
Warren Sayes
Jason Price

masH0070.wpd



EXHIBIT
A-3

CERTIFIED - RETURN RECEIPT

III's copy

DEPARTMENT OF THE ARMY
FORT WORTH DISTRICT, CORPS OF ENGINEERS
P. O. BOX 17300
FORT WORTH, TEXAS 76102-0300

RECEIVED

JUN 22 2006

REPLY TO
ATTENTION OF

June 16, 2006

Office of Counsel

SUBJECT: Contract No. W912G-05-C-0006, Passenger Processing Facility, England Air Park, Alexandria, LA, Claim Regarding Interpretation of the Contract Performance Period

ACC Construction, Inc.
P.O. Box 211900
Augusta, GA 30917

Gentlemen:

This letter is in response to your claim requesting an interpretation by the Contracting Officer of the contract performance period, as submitted in letters from various company personnel dated October 27, 2005; 22 November 2005; 10 March 2006; and 25 April 2006. A claims conference was held by telephone conference call with me on 11 May 2005, during which time members of your staff, the Government's staff, and I discussed the claim in detail. This is my final decision on your claim.

## INTRODUCTION

The claim in this case was submitted in connection with Contract No.W912G-05-C-0006, for the Passenger Processing Facility, at England Air Park, in Alexandria, Louisiana. As originally solicited, this project included work to construct the Passenger Processing Facility (PPF) and associated utility work, to construct the Pallet Shelter and associated utility work, to renovate Buildings 1707 and 1711, to remove and replace joint sealant at Building 1707, and to perform miscellaneous earthwork, paving sidewalk, curb and gutter, demolition, turfing, and landscape work. The project was solicited through a Request for Proposals, which was a Best Value Solicitation using the Trade-Off Process. The resultant contract is a fixed-price Standard Form 1442 construction contract which was awarded by the U.S. Army Corps of Engineers to ACC, Inc. on 8 March 2005 in the amount of $11,218,876.92. Notice to Proceed was issued

EXHIBIT
A-4

on 24 March 2005, and was acknowledged as having been received by the contractor on 29 March 2005.

## SUMMARY OF CLAIM

In your claim, you dispute the interpretation of the contract performance period as set forth orally by the Government's Administrative Contracting Officers Denny Dodge and Warren Sayes at the Preconstruction Conference and in writing at various other times during contract performance in several letters authored by them during the course of contract performance. You claim that the contract duration should be construed to be 450 days, based upon what ACC proposed at the time of contract formation. You specifically claim that the contract duration was an issue discussed with the former Contracting Officer, Valerie Sands, prior to contract award, during which time she agreed to allow 450 days for construction of the PPF. The Government's position has been that the contract duration is 450 days, but that the duration allowed by the contract for the construction of the PPF is only 360 days.

## FINDINGS OF FACT

1. Contract Clauses pertinent to this claim include the following (see Tab 3, Section 0700):

a. FAR 52.211-10, Commencement, Prosecution, and Completion of Work (Apr 1984). This contract clause provides that the contractor will be required to commence work under the contract within 10 calendar days after the date the contractor receives the notice to proceed, prosecute the work diligently, and complete the entire work ready for use not later than the times set forth in Section 01000.

b. FAR 52.211-12, Liquidated Damages - Construction (Sep 2000). This contract clause specifies that if the contractor fails to complete the work within the time specified in Section 01000, the contractor shall pay liquidated damages to the Government at the rates set forth in Section 01000 for each day of delay until the work is completed and accepted.

c. FAR 52.233-1, Disputes (Jul 02). This contract clause specifies the procedure for resolving disputes under the contract. Among other things, this clause defines the term "claim" to include the interpretation of contract terms.

2. On or about 29 October 2004, Solicitation No. W9126G-05-R-0001 was publicly advertised, by which a Passenger Processing Facility and other construction work was solicited to be performed at the England Air Park in Alexandria, Louisiana (Tab 3). Although the contract is titled the Passenger Processing Facility, the contract generally required the construction of a Passenger Processing Facility (PPF) and a Pallet Shelter, the removal of Building 1707, the renovation of Building 1711, the removal and replacement of joint sealant at Building 1707, and the performance of exterior work outside the buildings (Tab 3). The Bidding Schedule for the contract was broken down into specific line items of work for the offerors to bid their prices for these various components of construction work under the contract (Tab 3). This solicitation originally specified a performance period for all work, with the exception of turf or landscaping work (entitled Item of Work (1)), of 490 calendar days, with the commencement of work date being specified as "within 21 days after contract award or when Notice to Proceed is given by the Contracting Officer, whichever occurs first" (Tab 3, Section 01000). Liquidated damages of $1,000 per day were specified for failure to complete Item of Work (1) within this time period (Tab 3, Section 01000).

3. By Amendment No. 0001, effective 5 November 2004, the Construction Schedule in Section 01000 for performance of Item of Work (1) (i.e., all work under Solicitation No. W9126G-05-R-0001, except the establishment of turf and landscaping work), was completely replaced with a new schedule that reduced the maximum period of performance to 360 days from the 490 days that had originally been designated (Tab 4).

4. Amendment No. 001 also replaced Section 00100, Proposal Submission Instructions, Conditions, Notice to Offerors, Basis of Award, and Local Instructions, from the original solicitation (Tab 4). Paragraph 3.4 of this replacement Section provides as follows:

**FACTOR 4: CONSTRUCTION DURATION (VOLUME II, TAB 4).** The Government's requirement is that all work on this project be completed within (See Section 01000, Construction Schedule), inclusive of all review periods and Government phasing requirements specified. Offeror may propose a completion period of lesser duration; however, any such proposals for a completion period of lesser duration must include the same time periods for review and phasing as are set specified in this request for proposals. If the Government accepts a proposal for a completion period of lesser duration, and such proposal alters the time periods for review and phasing, the contract shall be read to include the original periods for review and phasing. Completion periods of significantly lesser duration may be rated as more advantageous to the Government. **If a completion period of lesser duration is proposed and accepted by the Government, the accepted completion period will replace the original construction schedule listed under Section 01000. In addition, if a completion period of lesser duration is proposed, the Bid Schedule must reflect pricing information for the lesser-proposed completion period** (emphasis in original). Offers [sic – should be offerors] who propose completion of the work beyond the maximum completion period specified above, [sic] will be rated unsatisfactory for this factor.

3.4.1 **Offeror's Submission Requirements.** Offerors must provide a proposed schedule to show how the contractor intends to perform the work within the proposed construction duration. This shall be shown in a time-scaled [Gant Chart] summary network, which shall have 50-100 activities.

3.4.2 **Evaluation.** This factor will be evaluated by reviewing the submitted scheduling documents. Completion periods of significantly lesser duration may be rated as more advantageous to the Government. Offers [sic – should be offerors] who propose completion of the work beyond the maximum completion period specified above, [sic] will be rated

> unsatisfactory for this factor. The total contract duration in calendar days, [sic] must be reflected on the Chart.

The language of Section 00100 was not further amended prior to contract award. It made clear that an offer proposing to complete the project sooner than the maximum amount of time allowed in Section 01000 could be considered more advantageous to the Government, and that failure to propose a completion duration within the time allowed by Section 01000 would result in the offer being rated unsatisfactory for this factor (Tab 4).

5. By Amendment No. 0002, effective 18 November 2004, the Bidding Schedule was revised to break out additional specific line items of work (i.e., 0005AA, 0005AB, and 0005AC) from the line items of work that had previously been set forth in the solicitation (Tab 5). Amendment No. 0002 also deleted the words "from NTP" in item 0008 of the Bidding Schedule and changed the proposal receipt due date from 2 December 2004 to 6 January 2005 (Tab 5).

6. By Amendment No. 0003, effective 16 December 2004, the Bidding Schedule was completely replaced (Tab 6). In this replacement, the words "for Work Item #1" were permanently added in two spots, where before the language of item 008 had stated "Completion Time for all work (NOT to exceed the maximum time stated in the Section 01000 CONSTRUCTION SCHEDULE)," such that the pertinent portion of the new text provided on all Bidding Schedules was as follows:

> PROJECT COMPLETION TIME*
>
> 0008 Completion Time <u>for Work Item #1</u> (Not to exceed the maximum time stated <u>for Work Item #1</u> [is] in Section 01000 CONSTRUCTION SCHEDULE)
>
> PROJECT COMPLETION TIME ____________ Calendar days
>
> *(Note: See Section 01000, Construction Duration)

(Tab 6). Thus, this change, in conjunction with the language in Section 00100 (see FOF #4 above) further clarified (a) that the

completion time for Work Item #1 could not exceed the maximum set forth in Section 01000, and (b) that the completion time for Work Item #1 could be (and was expected to be) different from the completion time for the entire project, which was a duration that was up to the offeror to set forth in their offer, but which could not exceed the maximum time allowed by Section 01000 (Tab 6).

7. Amendment No. 0003 also replaced the Construction Schedule in Section 01000 of the RFP (Tab 6). This new schedule set the contract duration for a maximum of 450 calendar days, comprised of a maximum of 360 calendar days being allowed for Item of Work (1) (which was defined as "all work including utility work, except Buildings 1707, 1711, hardstand around these buildings and establishment of turf"); and a maximum of 90 calendar days being allowed for Item of Work (2) (which was defined as "Buildings 1707, 1711 and hardstand around these buildings") (Tab 6). The construction work required under the solicitation was clearly phased in this schedule by the "Commencement of Work" column, which specified that the commencement of Item of Work (1) was to begin "within 21 days after contract award or when Notice to Proceed is given by the Contracting Officer, whichever occurs first," while Item of Work (2) would begin "within 15 days after Passenger Processing and Pallet Shelter are turned over to the user" (Tab 6). This new schedule specified rates for liquidated damages for each of these two phases of work at $1500 per calendar day for late completion of Item of Work (1) and $200 per calendar day for late completion of Item of Work (2) (Tab 6). Items of Work 3 and 4 had no specific start or end dates, nor did they specify separate rates for liquidated damages (Tab 6). No other Amendments were ever issued revising this schedule prior to contract award.

8. By Amendment No. 0004, effective 28 December 2004, the proposal receipt due date was changed from 6 January 2005 to 20 January 2005 (Tab 7).

9. On 20 January 2005, ACC Construction Company (hereinafter ACC) submitted their proposal to perform the contract (Tab 8). Volume II of that proposal contained several pages that had been added at the last minute before submitting

it to the Government, including the Bidding Schedule, which shows a FAX transmission time of 14:51 on 20 January 2005, and the proposed construction schedule, which shows a FAX transmission time of 14:54 on 20 January 2005 (Tab 8). Line item 008 of ACC's Bidding Schedule in their proposal shows a total project completion time being proposed by ACC of 450 calendar days (Tab 8). The construction schedule included in ACC's proposal, which has a run date of 20 January 2005, at 12:37, shows the two phases of work created by Amendment No. 0003, with a completion time period of 360 days for the first phase and 90 days for the second phase (Tab 8). This is clearly demonstrated (a) by the work activities of "1430, Prefinal" and "1440, Final" being performed within 360 days (specifically, work activity "1440, Final," is shown as completing on 24 February 2006, which is 360 days after the start date assumed in the schedule of 1 March 2005); and (b) by the additional work activities of "1180, Renovate Bld. 1711 and 1707", "7140, Concrete Paving", and "7166, Final Punch" being performed during the 90 days following the initial 360 days, with a final completion date of 25 May 2006, which is 450 days after the start date assumed in the schedule of 1 March 2005 (Tab 8).

10. ACC confirmed their proposed price and total time of 450 days for performance of the contract by letter dated 9 February 2005 (Tab 9). ACC was the only offeror on this solicitation, initially proposing to do all of the solicited work for $11,547,987.92. When they were asked to confirm their proposal price, they mistakenly submitted their proposal on the Bidding Schedule that was revised by Amendment No. 0002 (Tab 9), rather than the Bidding Schedule that was revised by Amendment No. 0003 (although they had correctly submitted the version required by Amendment No. 0003 as part of their proposal on 20 January 2005 - see Tab 8). The Bidding Schedule form revised by Amendment No. 0002 did not contain the language added by Amendment No. 0003, i.e., regarding the completion time for Work Item #1 as set forth in Section 01000, and drawing a distinction between the completion time for Work Item #1 versus overall "project" or "contract" completion time (Tab 5 and 6).

11. Following receipt and evaluation of the proposals for the solicitation, the Government determined that it had insufficient funds to be able to award the project as originally

solicited; consequently, the decision was made to delete the work on Buildings 1707 and 1711 (line items 0003 and 0004 in the Bidding Schedule), so as to be able to award the remainder of the project within the funds available (Tabs 10, 11 and 12). As a result of this action, a post-closing Amendment was issued on 22 February 2005, and on 7 March 2005, ACC revised their proposed price for the reduced scope project to $11,218,876.92 (Tabs 10 and 12). When ACC submitted their revised price, they submitted it on the revised Bidding Schedule (from Amendment No. 0003), which showed they planned to complete all contract work within 450 days, although the time for performance of Work Item (1) (which included the construction of the PPF) was still shown on this form to be within the time set forth in Section 01000 (Tab 12). Section 01000, last amended by Amendment No. 0003, had created two phases for the work, the first of which allowed a maximum of 360 days from the NTP for completion of the PPF, and a maximum of an additional 90 days for completion of the work in Work Item (2) (Tab 6). Thus, by virtue of this proposal, ACC proposed to complete the work in Work Item (1) within 360 days of the NTP, and the remaining work in Work Item (2) (after the deletion of Buildings 1707 and 1711 from the scope of the solicitation) in the 90 days thereafter, for a total "contract" or "project" duration of 450 days (Tabs 6, 10, and 12).

12. On 8 March 2005, the Contracting Officer awarded the contract to ACC based upon the post-closing amendment which reduced the scope of the project and ACC's revised price proposal based on the deletion of the work on Buildings 1707 and 1711 (Tabs 6, 10, 12, and 13). The work awarded consisted of line items 0001, 0002, 0005AA, 0005AB, 0005AC, 0006AA, 0006AB, 0006AC, 0007, 0008, 0009, 0010, and all revisions relating thereto, as set forth in Amendments 0001 through 0007 and the Contractor's proposal, including the construction duration of 450 days for the project (Tab 13). There were no changes made to the construction schedule set forth in Section 01000 as part of this post-closing amendment and award of the contract, nor were there any changes made to the scope of work included in what was defined as Item of Work (1) in Amendment No. 0003, nor were there any changes made to the Bidding Schedule's item 0008 revised by Amendment No. 0003 (Tabs 6, 10, 12, and 13).

13. The work identified in ACC's proposed construction schedule (i.e., the one with the run date of 20 January 2005, at 12:37) as work activity "7140, Concrete Paving," was shown with an early start date of 31 March 2006, which is after the work activity "1440, Final," which is shown with an early start date of 24 February 2006 (Tab 8). Inasmuch as 24 February 2006, was shown in ACC's proposed schedule as the date for completion of the work included within Item of Work 1 (or phase 1 of the contract, as created by Amendment No. 0003), and work activity 7140 was proposed to be performed after the completion of work in Item of Work (1) (as defined by Amendment No. 0003), work activity 7140, included as part of the work in Item of Work (2), appears to be the work designated in the Bidding Schedule as line items 0006, 0006AA, 0006AB, and 0006AC, which is broadly defined as remove and replace joint sealant at Building 1707 (Tabs 6, 8, 10, and 12). Thus, using ACC's proposal schedule, which ACC did not change after the issuance of Amendment No. 0007 and prior to contract award, there was work ACC had proposed to do after completing work on the PPF in the first 360 days that was not deleted by Amendment No. 0007 (Tabs 8, and 12).

14. A Preconstruction Conference was held on 29 March 2005, and ACC acknowledged receipt of the Notice to Proceed (NTP) on that date (Tabs 14, 15, and 16). As set forth in the Preconstruction Conference Minutes, the Government was of the opinion that work item 1 (which was all work, with the exception of the hardstand around Buildings 1707 and 1711, establishment of turf, and landscaping work) was to be completed in 360 days, and that the hardstand work (which was part of the work comprising phase 2 under Amendment No. 003) could be performed in a maximum of 90 days following thereafter (Tab 16). This latter work was what was remaining of Item of Work (2) work after Amendment No. 0007 had deleted the other work that was to have been performed under that work item under Amendment No. 0003.

15. By letter dated 30 March 2005, ACC's Project Manager, John Engler, complained that the NTP date should be 4 April 2005, rather than 29 March 2005, the date ACC acknowledged receipt of the NTP (Tab 17). Although his rationale is not entirely clear, it appears he believed the start date should be

4 April 2005, rather than 29 March 2005, as he added 21 days to 14 March, the date ACC received the award letter, apparently relying on the language in the commencement of work column in the Construction Schedule, Section 01000 of the solicitation (Tabs 6 and 17). The language in that column states, however, that the commencement of work shall be "within 21 days after contract award or when Notice to Proceed is given by the Contracting Officer, whichever occurs first (emphasis added)" (Tab 6). Since the NTP was acknowledged on 29 March 2005, and that date is earlier in time than the 4 April 2005, proposed by the Contractor, the applicable date under the language of the schedule would be the first occurring of these dates -- 29 March 2005 (Tab 6).

16. By letter dated 31 March 2005, ACC's Senior Project Manager, Will McKnight, opined that the contract[1] period of performance was 450 days, rather than 360 days (Tab 18). Although he referred to the matter having been discussed at the Preconstruction [Conference], there was no written explanation or rationale provided for his opinion in this letter (Tab 18).

17. By letter dated 6 May 2005, ACC's Project Manager, John Engler, complained that ACC was not getting answers to some of its questions (Tab 19). Among the issues he discussed therein were the issues again of how long the contract performance time was, and that the start date should be 4 April 2005, rather than 29 March 2005 (Tab 18). He did not provide any support for his allegation that "...at the PreConstruction [sic - should be Preconstruction] Meeting, our contract time was listed as 360 days (emphasis added)" although at the time of award, the contract performance time was listed as 450 days (Tab 19).

18. By letter dated 10 May 2005, the ACO suspended all on-site work for the construction of the Passenger Processing Facility (Tab 20). The suspension was expected to last until 10 July 2005 (Tab 20). Bilateral Modification No. P0002, which contains no reservations, granted ACC 131 days of at least

[1] Mr. McKnight and other representatives of ACC have repeatedly referred to the "contract" or "project" duration needing to be 450 days. The Government believes they really mean the duration for work on the PPF was or should have been 450 days, rather than all "contract" or all "project" work being 450 days, as the Government's representatives have consistently stated that the "contract" duration was 450 days.

excusable time for this suspension, and included time for remobilization following the suspension (Tab 32).

19. By letter dated 31 May 2005, ACC's Project Manager, Will McKnight, once again challenged the time for completion of the contract, and stated it should be 450 days (Tab 21). In this letter, he references a previous meeting between the parties, and stated ACC's "belief" that "Amendment 0007 took out the renovation work that was to take 90 days and extended the schedule to 450 days for the Passenger Processing Building" (Tab 21). In support for his conclusion, he provided copies of the SF 1442 and Amendment 0007, and argued that the "signed solicitation [] under paragraph 21 states the duration is 450 calendar days" (Tab 21). The subject of this letter is designated as "Contract Duration" (emphasis added) (Tab 21).

20. On or about 17 June 2005, ACC submitted its preliminary schedule for the contract, although by that point in time, it should have been submitting its initial schedule (i.e., a full blown schedule with detailed sequencing) (Tab 29). On 28 June 2005, this schedule was rejected with a Code E, as, among other deficiencies, there was no phasing code, no milestones, no holidays accounted for, no preparatory meetings scheduled, no cost loading, etc. (Tab 29).

21. By letter dated 12 July 2005, and in follow-up to an oral notice provided by telephone to ACC on 8 July 2005, the suspension was extended until 30 July 2005 (Tab 22).

22. On or about 20 July 2005, ACC submitted its second preliminary schedule for the contract, although by this point in time, it should have been submitting an initial full blown schedule with detailed sequencing (Tab 29). On 9 August 2005, this schedule was rejected with a Code E, as, among other deficiencies, there were no milestones in it, no phasing code, no preparatory meetings scheduled, no accounting for holidays, no cost loading, etc. (Tab 29).

23. By letter dated 7 September 2005, ACC provided notice that it wanted to perform exterior work around Building 1707 starting on 12 September 2005, and around Building 1711 starting on 19 September 2005 (Tab 23). Notice and approval for this

work was necessary as no schedule had been approved at this point in time and this work was part of the phase 2 work, which was not supposed to start until after the final acceptance of the Passenger Processing Facility, according to the phasing created in Amendment No. 0003 (Tabs 6 and 23).

24. By letter dated 15 September 2005, ACC's Project Manager, John Engler, once again raised the issue of contract performance time (Tab 24). In this letter, he argues that Addendum [sic - should be Amendment] #7 takes precedence over Addendum [sic - should be Amendment] #3, and states ACC "will have 450 days after the NTP as our construction duration of the entire contract" (emphasis added) (Tab 24).

25. By letter dated 13 October 2005, an Administrative Contracting Officer (ACO) for the Government, Denny Dodge, set forth the Government's position regarding the start date for the contract (Tab 25). In that letter, he explained that the column in the Construction Schedule section of the contract (Section 01000), labeled "Commencement of Work (calendar days)," states that the first item of work will begin "Within 21 days after contract award or when Notice to Proceed is given by the Contracting Officer, **whichever occurs first** (emphasis in original)" (Tab 25). He goes on to point out that ACC's earlier claim that their bonding company would not honor the award of the contract until they received the original contract award, which they claimed they did not receive until 22 March 2005, is clearly refuted by the fact that the bonds were received by the Government on 21 March 2005 (Tab 25). His final conclusions set forth in this letter are that the contract is clear that NTP will occur within 21 days of contract award or when issued by the Contracting Officer, whichever occurs first; that the NTP in this case was acknowledged as having been received by ACC on 29 March 2005; that the issuance and acknowledgement of the NTP complied fully with contract provisions; and that the contract award letter was not shown to be an actual factor in ACC's ability to timely obtain bonds (Tab 25). Thus, he concluded the NTP acknowledgement date of 29 March 2005, was the correct start date for the contract (Tab 25).

26. By letter dated 14 October 2005, an ACO for the Government, Warren Sayes, set forth the Government's position

regarding the contract performance period (Tab 26). Mr. Sayes is the ACO on site at the project. Among other things, in this letter he noted that, although the Government had not formally responded in writing to ACC's letters regarding the contract performance period, the Government's position had been orally discussed on several occasions with ACC's representatives, including at the Preconstruction Conference and on 21 April 2005 and, thus, ACC was or should have been fully aware of the Government's position on this issue (Tab 26). He noted in this letter that Mr. Engler had shared in prior discussions that, following submission of the ACC's revised proposal and prior to contract award, ACC had confirmed their final price and 450 calendar day performance period, but he pointed out that no further supporting documentation had been submitted by ACC to persuade the Government of the merits of ACC's allegations in this regard (Tab 26). He also noted the Government's agreement that the overall contract performance period was 450 days, but that it was apparent ACC was ignoring other portions of the schedule requirements of Section 01000, notably the work that came within the definition of Item of Work (2) that had not been deleted by Amendment 0007, which work was to be performed in the 90 days following the completion of the PPF (Tab 26). He also explained that Amendment No. 0007 had not altered the 360 day performance requirement for completion of the PPF, so although the contract performance period was 450 days as ACC argued, the performance period for completing the PPF was only 360 days (Tab 26).

27. By letter dated 27 October 2005, ACC's Senior Project Manager, Will McKnight, disagreed with Mr. Sayes' letter of 14 October 2005 (Tab 27). He argued that the contractor's technical proposal was made part of the contract, and that ACC's technical proposal had contained a schedule (a copy of which he enclosed with this letter) which he asserted showed a duration of 490 days with no deviation between the work on the PPF and Buildings 1707 and 1711 (Tab 27). He further argued that ACC's revised proposal agreed to the 450 calendar days for performance, rather than 490 days (presumably due to the deletion of work by Amendment No. 0007, although this was not stated) (Tab 27). He asked to meet with Valerie Sands (who was the former Contracting Officer, and who had since retired), or with other contracting personnel, and he also asked for a

Contracting Officer's decision on the matter in this letter (Tab 27). The schedule enclosed with this letter shows a run date of 18 January 2005, at 18:49[2], and indicates a performance period of 490 days, with no separate milestone date for completing the PPF earlier than 490 days (Tab 27). However, contrary to his allegations, the schedule he provided with this letter was not the schedule ACC submitted with their proposal on 20 January 2005, as that schedule has a run date of 20 January 2005 at 12:37, and clearly shows the PPF being performed in 360 days, with work in Item of Work (2) being performed in a maximum of 90 days thereafter (Tab 8) (see also FOF 9 and 13).

28. By letter dated 22 November 2005, ACC's Mason McKnight argued that the schedule that was sent by ACC with their "revised bid" on 9 February 2005, showed the concrete paving work (at Building 1707) was to be done within the first 360 days, which would mean there was no work remaining to be performed after the completion of the PPF, and therefore the Government's interpretation of the schedule as allowing 90 days after the completion of the PPF for some work under the contract was not a valid interpretation (this was in response to Mr. Sayes' position set forth in his letter of 14 October 2005 that the concrete work was part of Item of Work (2), that Item of Work (2) was to be performed in the 90 days after completion of the Passenger Processing Facility (PPF), and the PPF was to be completed in 360 days, for a total contract duration of 450 days) (Tab 28). The schedule Mr. McKnight enclosed in his letter of 22 November 2005, however, has a run date of 14 November 2005, at 11:21, which was some 9 months after 9 February 2005, so it does not appear to have been one created at the time of the 9 February 2005 letter (Tab 28). Further, contrary to his assertion in his 22 November 2005 letter, there was no schedule enclosed with ACC's "revised" bid[3] submitted on 9 February 2005, as that document (which was a bid confirmation really, not a revised bid) was submitted by FAX, and the cover

---

[2] Two copies of this schedule are included in the Rule 4 File, as some entries are easier to read on one copy, while other entries are easier to read on the other copy.

[3] While ACC referred in both their 9 February and 22 November 2005 letters to this being their "revised" bid, the bid form accompanying this letter was not the "revised" bid due to the deletion of work under the post-closing Amendment No. 0007, but rather a confirmation of their original bid price of $11,547,987.92. Amendment No. 0007 was not issued until 22 February 2005, some 13 days after the 9 February 2005 FAX from ACC.

page for the FAX shows it was 4 pages, including the cover page, ACC's one page letter of 9 February 2005, and the two pages of the bidding schedule (Tab 9). The bidding schedule ACC submitted on 9 February 2005, which shows the original bid price of $11,547,987.92 being confirmed, was not revised by ACC until submission of their letter on 7 March 2005, which was after the issuance of the post-closing Amendment No. 0007 on 22 February 2005 - and ACC's 7 March 2005 submission to the Government did not include any schedule (Tabs 9 and 12).

29. Although Mr. McKnight claimed in his letter of 21 November 2005 (attached to the 22 November 2005 letter) that he "asked Mrs. Valerie J. Sands to let the time for the Passenger Processing Facility and related work run from 360 days to 450 days" he provided no supporting documentation for this point (Tab 28). He also noted that "when addendum [sic - should be Amendment] #7 came out there was no new bid form" and he claimed that ACC returned the letter dated 7 March 2005 (which he claimed was the copy enclosed with his 22 November 2005 letter) "with the revised bid omitting item 3 and item 4 and the time for all remaining bid items...to be 450 days" (Tab 28). However, the copy of the 7 March 2005 letter he sent in this package contains handwritten marks and numbers, and is presented on the version of the Bidding Schedule that accompanied Amendment No. 0002, which did not contain the language added to the Bidding Schedule item 008 by Amendment No. 0003 (Tabs 6 and 28). By comparison, the copy of the 7 March 2005 letter contained in the Government's records shows the numbers typed in (not handwritten in), the words "Deleted per ADD 7" typed in the blanks for items 0003 and 0004, and it was submitted on the Bidding Schedule form revised by Amendment No. 0003 (which form contains the language added by that Amendment which differentiates in item 008 the completion time for "Item of Work (1)" as being set forth in Section 01000, and as something separate from the "Project Completion Time") (Tab 12). ACC personnel have consistently used the term "addendum" or "addenda" rather than "amendment" to refer to changes to the solicitation, while the Government has consistently used the term "amendment" rather than "addendum" or "addenda" to refer to changes to the solicitation. Thus, I find that the 7 March 2005 letter contained in the Government's records, rather than the version submitted in ACC's letter of 22 November 2005, is

the genuine version of the letter and Bidding Schedule that was prepared by ACC and conveyed to the Government on or about 7 March 2005; that this version was the proposal by which ACC revised its price as a result of the post-closing Amendment No. 0007, noting thereon the deletion of items 0003 and 0004 with the abbreviation ADD 7 for Amendment No. 0007; and that there is no evidence in this document that ACC ever proposed, or that the Government ever agreed, to alter, modify, or extend the time for performance of any work included in their original proposal (Tabs 12 and 28). In fact, on its face, item 0008 of ACC's proposal indicates that the completion of Work Item (1) (which work was not altered in any way by Amendment No. 007) was proposed to be completed within the time set forth for Work Item (1) in Section 01000, and that the "project" completion date would be within 450 days (Tab 12).

30. On or about 23 November 2005, the Government approved ACC's as-planned schedule for the project (Tabs 29 and 30). This schedule shows completion of the PPF in 360 days from the NTP dated of 29 March 2005 (i.e., 24 March 2006), and merger of the work remaining from Item of Work (2) (after Amendment No. 0007 deleted the work on Buildings 1707 and 1711 from the contract) into the 360 day performance period for Item of Work (1) (Tab 29). This change to the schedule for performance of the contract was proposed by ACC and approved by the Government long after contract award (Tabs 23, 29 and 30).

31. By letter dated 22 December 2005, ACC's Mason McKnight complained that ACC's letter of 21 November 2005, had not been answered (Tab 31). ACC again requested a Contracting Officer's decision on their claim (Tab 31).

32. By letter dated 10 March 2006, ACC's Project Manager, William Wheeler, again requested a meeting with the Contracting Officer to discuss the "contract duration" question (Tab 33).

33. By letter dated 25 April 2006, ACC's Mason McKnight submitted a letter "correcting" his earlier letter of 21 November 2005 (Tab 34). According to Mr. McKnight in this letter, ACC originally proposed to do the work in 490 days, as shown by what he included with this letter as Exhibit #2, that

he claimed was their original proposal and original "bar chart" (Tab 34).

a. However, the Bidding Schedule in the Exhibit #2 he submitted with this letter is the version of the Bidding Schedule that accompanied Amendment No. 0002, rather than the one accompanying Amendment No. 0003 (Tabs 34 and 5). The version of the Bidding Schedule in Amendment No. 0003 added in language for item 0008 regarding the completion of Work Item #1, differentiating it from the "Project Completion Time" of _______ on the face of the bidding schedule, where the offerors were to propose a completion time for the whole contract that might be as much as the 450 days maximum allowed by the RFP, but could be less; and by which the maximum completion time for Work Item #1 (i.e., 360 days) was set forth in Section 01000 (Tab 6). By comparison, the Bidding Schedule in the Government's records of ACC's proposal that was submitted and evaluated by the Government for award is the version from Amendment No. 0003, with the language regarding Work Item #1 added in to item 0008, and it has a FAX data line across the top of it that shows it was faxed on 20 January 2005 at 14:51 (Tab 8), which was the due date for the receipt of proposals on the RFP (Tab 7).

b. Additionally, the "bar chart" McKnight claimed was the original bar chart ACC submitted, and by which they had proposed to perform the construction of the PPF in 490 days, is inconsistent with the construction schedule in the Government's records of ACC's proposal that was submitted and evaluated as part of ACC's proposal for the contract (Tabs 8 and 34). The ACC proposal in the Government's records shows the same kind of FAX data, with a FAX transmission time of 20 January 2005 at 14:52, as was shown on the Bidding Schedule discussed above, and it also shows completion of the PPF within 360 days, with completion of the work in Item of Work (2) being completed in 450 days (Tab 8). I find that the genuine versions of the original Bidding Schedule and Construction Schedule submitted by ACC and evaluated for award by the Government are those which were FAXed on 20 January 2005 (the due date for receipt of proposals for the contract) (Tabs 7 and 8), as those are the versions which were actually in the Government's records as part of ACC's proposal and were the ones actually used by the evaluators when they evaluated ACC's proposal.

34. Although Mr. McKnight also argued in his 25 April 2006 letter that "the original bar chart was to be reduced from 490 days to 450 days," and although he personally claimed in a statement he signed and submitted as Exhibit #14 to his 25 April 2006 letter that "ACC bid this job with 450 days to build the PPF," the construction schedule ACC included as part of its proposal submitted on 20 January 2005, which the Government actually evaluated for award (which has a run date of 20 January 2005 at 12:37) indicates ACC actually proposed to build the PPF in 360 days, which was consistent with the requirements of the RFP at the time of their proposal (Tabs 6 and 8). Had ACC proposed to do the contract in 490 days, or the PPF in 450 days, as Mr. McKnight claimed in his letter of 25 April 2006, they would not have been responsive to the requirements of the RFP as amended by Amendment No. 0003, and their proposal would have been found unsatisfactory (Tabs 4, 6, 8, and 34).

ANALYSIS

You have argued at various times, with various documents you have urged support your conclusions at that particular moment, that (1) ACC proposed to perform the contract in 490 days; (2) ACC proposed to perform the contract in 450 days; (3) ACC proposed to perform the PPF in 450 days; and (4) Valerie Sands agreed to allow 450 days for performance of the PPF. The fact that your claims have varied somewhat over time, by itself, tends to undermine any confidence one could attach to any one of those arguments. I did contact the former Contracting Officer, Valerie Sands, and discussed the situation with her, as well as with Mr. Tuttlebee, the Contract Specialist. Neither of them recalled that there was an extension of time granted for the completion of the PPF. Ms. Sands felt that if she were planning to change the contract terms as you have represented, she would have ensured the contract documents reflected any such change, or, at the very least, would have prepared some kind of a memorandum or notation to that effect and placed it in the contract file. I have reviewed the entire contract file and have found no such documentation. Thus, there is no independent corroboration in the Government's records or from discussing this with the former Contracting Officer and Contract Specialist for the overall argument you have advanced, i.e., that ACC was given 450 days to construct the PPF. The forgoing FOF have set

out the facts I have found pertinent to this claim, along with the rationale for any conclusions I drew in finding those facts. The following analysis will explain how I have applied those facts to render a decision on your claim.

This claim is governed by the general rules of contract interpretation, which provide that the language contained within the four corners of the contract is to be given its normal meaning in the absence of any ambiguity. Further, the contract is to be read as a whole, giving meaning and effect to all provisions thereof to the extent that it is possible to do so, such that no part of it is left superfluous, void, or without meaning. Applying these general notions of contract interpretation to this case mean that, unless the contract language regarding the schedule is ambiguous (and ambiguous is a term of art, meaning susceptible of two or more reasonable interpretations), the contract language shall control.

As discussed in the FOF, Amendment No. 0003 created two phases of work in Section 01000, namely Item of Work (1), which consists of "all work including utility work, except Buildings 1707 and 1711, hardstand around these buildings and establishment of turf"; and Item of Work (2), which consists of "Buildings 1707, 1711 and hardstand around these buildings." The creation of the two phases of work was accomplished in part by the column in that schedule which is entitled "Commencement of Work", which states that Item of Work (1) was to begin "within 21 days after contract award or when Notice to Proceed is given by the Contracting Officer, whichever occurs first" and that Item of Work (2) was to begin "within 15 days after Passenger Processing Pallet Shelter are turned over to the user." There is no way that the work included in these two phases could be done simultaneously, as the work in Item of Work (2) could not start until after the completion and turn over to the user of the PPF, which was part of Item of Work (1). The designation of two phases in this schedule is also shown by the facts that, under the column entitled "Completion of Work", 360 days are allowed for completion of Item of Work (1), and 90 days are allowed for Item of Work (2); and there are separate liquidated damages rates (under the column entitled "Liquidated Damages") of $1500 for Item of Work (1) and $200 for Item of Work (2). In addition to this schedule, the Bidding Schedule

which was added to the solicitation by Amendment No. 0003 bolsters the conclusion that this schedule created two phases of work, as item 0008 in the Amendment No. 0003 Bidding Schedule added the language designating a completion time for Work Item #1 that was not to exceed the time stated in Section 01000, and differentiated that time as being separate from the Project Completion Time. Reading these parts of the solicitation together, and recognizing that they were never further formally changed before contract award, leads me to the conclusion that the four corners of the solicitation specified two phases of work, the first allowing a maximum of 360 days for performance and the second allowing a maximum of 90 days for performance as discussed above, but also allowing the offerors to propose LESS TIME as a possible trade off for a higher price.

Reviewing ACC's proposal against this backdrop of what the solicitation required shows that ACC also interpreted the solicitation as requiring two phases of work, the first phase of which was to be completed in 360 days and the second of which was to be completed in 90 days, as ACC's schedule included in its proposal on 20 January 2005 clearly shows that exact breakdown. This can be easily demonstrated by looking at what work was to be finished by 24 February 2006, assuming a start date of 1 March 2005 (which is 360 days), and what work was to be tackled and completed in the 90 days thereafter (i.e., work on Buildings 1707, 1711 and the hardstand around them). Further, ACC's bidding schedule submitted on 20 January 2005, also bolsters this conclusion, inasmuch as it shows a total of 450 days for completion of the "Project" in item 0008 within 450 days, which is the sum of 360 days and 90 days. Thus, at that point in time, prior to the current dispute arising, the parties agreed about what the proper interpretation was of this requirement in the solicitation. I conclude, therefore, that the solicitation (and the resulting contract) language on this point is not ambiguous, as no second reasonable interpretation has been advanced to me and I can discern none. The only question that remains, therefore, is whether this provision was changed by any action of the Contracting Officer after the submission by ACC of its proposal.

As described in detail in the FOF, the post-closing Amendment No. 0007 deleted part of the work under Item of Work

(2), i.e., the work of renovating Buildings 1707 and 1711, but it did not delete the hardstand work around these buildings. Thus, when Amendment No. 0007 was issued, there was still some work that was to be performed in the second phase of work that had been created by Amendment No. 0003 in Section 01000, and all of the work in the first phase was still to be performed under the contract. However, there was no reason to expand the period of performance time for Work Item (1), as there had been no change in the scope of work that was supposed to be done under that Work Item as a result of Amendment No. 0007. And, while there might have been some justification for reducing the time allowed for Work Item (2) as a result of deleting some of the work that had previously been included in that work item, there was no such reduction in time effected by Amendment No. 0007.

ACC has alleged that they requested and that Valerie Sands, the prior Contracting Officer, agreed to allow construction of the PPF in 450 days. However, I do not see that there would have been any justification for any such agreement, as there was no expansion of work to be performed as a result of Amendment No. 0007 - in fact, there had been a reduction in the amount of work to be performed under the contract as a result of Amendment No. 0007. Furthermore, I do not see how that reduction could have ever negatively affected ACC's ability to fulfill its prior representation in its proposal on 20 January 2005 to construct the PPF in 360 days (which was an affirmative solicitation requirement as I discussed above), because the deletion of work was work that was supposed to be done under Item of Work (2), not (1). Thus, I do not see how deletion of work could have had any negative impact on ACC's ability to complete the work in Item of Work (1) so as to necessitate an extension of time for constructing the PPF. However, allowing ACC 450 days to complete the PPF, when they had proposed to do that work in 360 days, would have presented a significant negative impact on the ability of the Corps to complete this facility within the time constraints our user had requested (which was the reason for the 360 day time period in the solicitation in the first place). In other words, if the Government could have lived with allowing 450 days for construction of the PPF, there would have been no need in Amendment No. 0003 to create a separate completion date for that work within a maximum of 360 days, while allowing other contract work to take as much as a maximum of 450 days.

Moreover, I know Valerie Sands. I have worked with her over a number of years, and have always found her to be very conscientious in following up on documenting changes to a contract or a solicitation, particularly where they are a result of a negotiation between the Government and the contractor. Given that I believe she would have followed up on any such change, but there is no evidence she did, or even that she noted in the contract file that any such change had been proposed, I can only conclude that if ACC did, in fact, request such a change, she did not recognize that they were requesting it.

I know, from reviewing the various letters from ACC and even from what ACC's representatives stated in the claims conference that ACC's representatives frequently used the term "contract" or "project" completion time when they really meant PPF completion time. Therefore, I suspect that, if the issue were ever raised, ACC's representatives used the term "contract" or "project" completion time in their request, rather than PPF completion time, and requested that they be allowed 450 days to complete the "contract" or the "project," rather than to complete the PPF. This would have been fully acceptable to the Government, as that period of time was allowed in Amendment No. 0003. And, it might not have even occurred to her that this was a strange request (in view of what was allowed under Amendment No. 0003), as the time allowed under the original solicitation for construction of the PPF (prior to any amendments) was 490 days. Thus, she might have thought ACC was just trying to verify that the time for completion of the entire project was 450 days, not 490 days.

## DECISION

Based on the forgoing discussion of the facts and analysis applicable to this claim, I find that the language of the solicitation and resulting contract was not ambiguous; that the time for construction of the PPF at the time of the proposal and subsequent award was 360 days; and that that period of performance was never extended by the Contracting Officer. Thus, at the time of award, ACC was required to complete the PPF within 360 days. I further find that the Government's communication of its interpretation for this period of

performance was communicated to ACC at the Preconstruction Conference and at various other times during contract performance, so ACC knew or should have known that this was the interpretation the Government accorded this contract language, and should have been working to complete the PPF based upon that interpretation unless it requested a Contracting Officer's decision on the issue so as to be able to appeal to the Board or the Court of Federal Claims. While it is true the Government personnel handling this claim did not realize earlier that it was a claim cognizable under the Contract Disputes Act, and should have forwarded it to me for a decision sooner than they did, I find that there was no prejudice to ACC as a result of this, as ACC could have appealed the deemed denial of this claim at any point 60 days after the claim was submitted to the ACO and they had requested a Contracting Officer's Decision on it.

This letter is the final decision of the Contracting Officer. The parenthetical references herein refer to the correspondence and other documents which substantiate this decision and which will be included in the appeal assembly should you choose to appeal this decision. This decision may be appealed to the Armed Services Board of Contract Appeals, Skyline Six, 5109 Leesburg Pike, Falls Church, VA 22041-3208. If you decide to appeal, you must mail or otherwise furnish a written notice thereof to the Armed Services Board of Contract Appeals within 90 days from the date your receive this decision. A copy thereof shall be furnished to the Contracting Officer from whose decision the appeal is taken. In lieu of appealing to the Armed Services Board of Contract Appeals, you may bring an action directly in the U.S. Court of Federal Claims (except as provided in the Contract Dispute Act, 41 U.S.C. § 603, regarding maritime Contracts) within 12 months of the date you receive this decision.

Sincerely,

LaVette C. Buford
Contracting Officer

Enclosure

## Appeal Record Index

TAB 1 Notice of Appeal.

TAB 2 Contracting Officer's Final Decision Letter, with Findings of Fact and certified receipt.

TAB 3 Pertinent Portions of Solicitation No. W9126G-05-R-0001for the Passenger Processing Facility at England Air Park, LA, dated 28 October 2004.

Tab 4 Amendment No. 0001, effective 5 November 2004.

TAB 5 Amendment No. 0002, effective 18 November 2004.

TAB 6 Amendment No. 0003, effective 16 December 2004.

Tab 7 Amendment No. 0004, effective 28 December 2004.

TAB 8 Technical Proposal, Volume II, submitted on 20 January 2005 by ACC Construction Co., with signed SF 1442 and bidding schedule completed (offer) from ACC with same date.

Tab 9 Letter dated 9 February 2005, from ACC to the Contract Specialist, confirming ACC's revised bid price and enclosing the revised Bid Form (Bidding Schedule).

Tab 10 Facsimile Transmission from Contract Specialist to ACC, transmitting Amendment No. 0007, effective 22 February 2005 (post-closing amendment) for execution and return.

Tab 11 E-mail messages dated 24 February 2005 to the Contracting Officer authorizing the deletion of buildings 1707 and 1711 from the work to be done under the solicitation.

Tab 12 Letter dated 7 March 2005, from ACC to the Corps, with enclosures, confirming receipt of Amendment No. 0007, and confirming their price after deletion of bid items 003 and 004 (i.e., buildings 1707 and 1711).

Tab 13 Letter dated 8 March 2005, from the Contracting Officer to ACC (with enclosure of signed SF 1442) awarding the contract for the Passenger Processing Facility to ACC.

Tab 14 Letter dated 17 March 2005 (Serial No. C-0001) from the Administrative Contracting Officer to ACC scheduling the Preconstruction Conference for 29 March 2005.

Tab 15 Notice to Proceed, dated 24 March 2005 and acknowledged on 29 March 2005.

Tab 16 Minutes of the Preconstruction Conference held on 29 March 2005.

Tab 17 Letter dated 30 March 2005 (Serial No. H0001), without enclosure, from ACC to the ACO, stating the NTP should be 4 April 2005.

Tab 18 Letter dated 31 March 2005 (Serial No. H0006), from ACC to the ACO, challenging the time for completion of the contract set forth in the Preconstruction Conference Minutes.

Tab 19 Letter dated 6 May 2005 (Serial No. S0006) with enclosure, from ACC to the ACO, again challenging the time for completion of the contract set forth in the Preconstruction Conference Minutes and the date of the NTP.

Tab 20 Letter dated 10 May 2005 (Serial No. C-0019), from the ACO to ACC, suspending work on the Passenger Processing Facility through 10 July 2005.

Tab 21 Letter dated 31 May 2005 (Serial No. H00020), with enclosures, from ACC to the ACO, challenging the time for completion of the contract.

Tab 22 Letter dated 12 July 2005 (Serial No. C-0013), from the ACO to ACC, extending the suspension to 30 July 2005.

Tab 23 Letter dated 7 September 2005 (Serial No. H00036), from ACC to the ACO, setting forth ACC's intention to start certain work and the dates that that work will start.

Tab 24 Letter dated 15 September 2005 (Serial No. H00040), from ACC to the ACO, addressing the proper

interpretation (according to ACC) of the contract performance period.

**Tab 25** Letter dated 13 October 2005 (Serial No. C-0015), from the ACO to ACC, addressing the NTP start date issue.

**Tab 26** Letter dated 14 October 2005 (Serial No. C-0019), from the ACO to ACC, addressing the contract performance period.

**Tab 27** Letter dated 27 October 2005 (Serial No. H00049), with enclosure, from ACC to the ACO, requesting a contracting officer's decision on the contract performance period issue.

**Tab 28** Letter dated 22 November 2005 (Serial No. H00054), with enclosures, from ACC to the Jason Price, again challenging the contract performance period, this time in conjunction with submission of the contractor's schedule.

**Tab 29** As-planned schedule, approved on 22 November 2005.

**Tab 30** Letter dated 23 November 2005 (Serial No. H00056), from ACC to the ACO, regarding the approval of ACC's as-planned schedule and the negotiation of time due on the suspension.

**Tab 31** Letter dated 22 December 2005 (Serial No. H0070), from ACC to the ACO, converting the letter dated 21 November 2005 [sic - should be 22 November 2005] into a claim by requesting a contracting officer's decision on it.

**Tab 32** Modification No. P0002, dated 11 January 2006.

**Tab 33** Letter dated 10 March 2006 (Serial No. H0091), with enclosures, from ACC to the Chief of the Contracting Division in the Fort Worth District, requesting a meeting with the contracting officer on their contract performance period claim.

**Tab 34** Letter dated 25 April 2006 (Serial No. H0099), with enclosures, from ACC to the Contracting Officer, correcting their 21 November 2005 letter.