IN THE UNITED STATES
COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ACC CONSTRUCTION CO., INC., Plaintiff, | ) | |
| v. | ) | CASE NO. 07-379C (Judge Baskir) |
| UNITED STATES, Defendant. | ) | |

# MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO TRANSFER CASE TO ARMED SERVICES BOARD OF CONTRACT APPEALS

## TABLE OF CONTENTS


I. QUESTION ..... 1

II. CONCISE STATEMENT OF THE CASE ..... 2

III. FACTUAL BACKGROUND ..... 2

A. The Contract ..... 2

B. Contract Claims and Litigation ..... 3

IV. PROCEDURAL HISTORY ..... 5

A. Before the Court ..... 5

B. ASBCA No. 56071 ..... 5

C. ASBCA No. 56125 ..... 6

D. ASBCA No. 56155 ..... 6

V. SUMMARY OF ARGUMENT ..... 6

VI. ARGUMENT AND CITATION OF AUTHORITY ..... 7

A. The Court's Authority, Guidance, and Discretion ..... 7

B. Factors for Consideration ..... 9

1. ACC's Choice of Forum ..... 9

2. Some Issues Overlap or are Duplicative ..... 10

3. The Issues Arise from the Same Contract ..... 11

4. The Interests of Justice ..... 11

5. Convenience of Parties and Witnesses ..... 12

6. The Board Has Made Significant Progress in Processing the Appeals in Comparison with the Court. ..... 12

VII. CONCLUSION ..... 13

# TABLE OF AUTHORITIES

## Statutes

41 U.S.C.§§ 601-13, the Contract Disputes Act of 1978.

**41 U.S.C. § 609(d).**

## Legislative History

**S. Rep. No. 1118, 95th Cong. 31, reprinted in 1978 U.S. Code Cong & Ad. News 5235, 5265.**

## Court Decisions

***Joseph Morton Co. v. United States,* 757 F.2d 1273, 1280 (Fed. Cir. 1985).**

***Rockwell Automation, Inc. v. United States,* 70 Fed. Cl. 114, 126 (2006).**

*Morse Diesel Inter., Inc. v. United States,* 69 Fed. Cl. 558, 564 (2006).

*Giuliani Contracting Co., Inc. v. United States,* 21 Ct. Cl. 81, 83 (1990).

## Regulations

48 C.F.R. (the Federal Acquisition Regulation) § 52.233-1.

**IN THE UNITED STATES**
**COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **ACC CONSTRUCTION CO., INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CASE NO. 07-379C** |
| **v.** | ) | **(Judge Baskir)** |
| | ) | |
| **UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM IN SUPPORT OF**
**PLAINTIFF'S MOTION TO TRANSFER CASE TO**
**ARMED SERVICES BOARD OF CONTRACT APPEALS**

COMES NOW, Plaintiff, ACC Construction Co., Inc. ("ACC"), by and through its undersigned counsel and files the following Memorandum in Support of its Motion to Transfer. ACC seeks transfer of this case to the Armed Services Board of Contract Appeals ("the Board") pursuant to the Court's authority under **41 U.S.C. § 609(d)**.

## I. QUESTION

Should this case be transferred to the Armed Services Board of Contract Appeals to be considered in that forum with the Plaintiff's other multiple claims?

## II. CONCISE STATEMENT OF THE CASE

ACC contends that a transfer to the Board is warranted primarily because all claims under the contract should be heard in the forum chosen by the Plaintiff contractor and should be heard in a single forum to avoid the possibility of inconsistent results, especially between or among several claims that involve delay and time extensions. Other factors to be discussed below support the propriety of a transfer to the Board. We urge that the motion be granted.

## III. FACTUAL BACKGROUND

### A. The Contract

Contract No. W9126G-05-C-0006 was awarded by the United States of America ("the Government") to ACC on March 8, 2005. The contract work was for construction of a Passenger Processing Facility and other construction work at England Air Park, Alexandria, Louisiana. (Complaint, ¶¶ 1-2)

The Contract was awarded subject to the **Contract Disputes Act of 1978, 41 U.S.C. §§ 601-13** ("the CDA"). Among other provisions in the contract is the standard Disputes provision found at **48 C.F.R. (the Federal Acquisition Regulation) § 52.233-1**. That provision states, among other

things, that the Contract is subject to the CDA. (Complaint, ¶ 7, Exhibit A-4 (attached to Complaint), ¶ 1.c at 3)

### B. Contract Claims and Litigation

During the administration of the Contract, which continues, certain matters have been and are being disputed. Some of the disputed matters have been the subject of written claims that have been submitted by ACC to the Government Contracting Officer ("the CO"). At least four (4) claims have been denied by the CO, three (3) by written decision and one has been deemed by ACC to be denied. (Affidavit of Mason McKnight, III, ("McKnight Affidavit") at ¶ 4 attached hereto and incorporated herein as Exhibit A-5 [Exhibits A-1 through A-4 were attached to the Complaint])

The first claim by ACC that was denied by the CO was the subject of a written decision dated June 16, 2006 (Complaint, ¶¶ 20, 22). ACC did not take an appeal to the Board within the time allowed by the CDA, i.e., 90 days after receipt of the CO's written decision. Mr. McKnight, as a principal with ACC and as the senior project manager for ACC on the Contract, did not yet, at that time, have a full appreciation for the merits of the first claim. Further, he did not have a complete understanding of how that claim might relate to other claims under the contract, in particular, delay and time extension claims. Mr. McKnight did not envision the number and scope of

other potential claims under the contract. Some claim events had not yet occurred at that time. (McKnight Affidavit, Exhibit A-5, ¶¶ 3, 5)

By the time Mr. McKnight had decided that it was in ACC's interest to challenge the CO's written decision denying the claim, ACC had but one option that it was prepared to take; that is, to take an action before the Court (McKnight Affidavit, Exhibit A-5, ¶ 5). Accordingly, ACC filed the action in this case before the Court by way of a Complaint transmitted to the Court on June 13, 2007 and filed at the Court on June 14, 2007 (Court Document 1). The Complaint, in effect, seeks a 90-day time extension for work under Phase 1 of the Contract work as well as release of earned but retained funds being held by the Government in anticipation of an assessment of liquidated damages. (Complaint ¶¶ 3, 14, 17, 22 and 24)

On June 13, August 2, and August 29, 2007, ACC filed Notices of Appeal before the Board on other claims that have been denied by the CO. (Exhibits A-6, A-7, A-8, attached hereto and incorporated herein). The Board docketed those appeals as Nos. 56071, 56125 and 56155 on June 18, August 7, and September 4, 2007, respectively. (Exhibits A-9, A-10, and A-11, attached hereto and incorporated herein) The claims under all three appeals allege delay and seek time extensions as a part of the relief requested. If other ACC claims are denied by the CO, and if ACC

determines that it will challenge any such claim denial, than ACC intends to file its appeal(s) before the Board. (McKnight affidavit, Exhibit A-5, ¶¶ 6-7)

## IV. PROCEDURAL HISTORY

### A. Before the Court

ACC's Complaint was filed before the Court on June 14, 2007. On August 9, 2007, the Government requested an enlargement of time until October 12, 2007, within which to file an Answer. ACC did not object to the request. The Court granted the enlargement by Order dated August 13, 2007. (Court Documents 1, 6, and 7)

The Court has appointed Judge Horn as an ADR Judge. Judge Horn has set a telephonic ADR status conference with both parties for October 19, 2007 (Court Documents 3 and 10).

### B. ASBCA No. 56071

ACC filed its Complaint dated July 12, 2007. The Government filed an Answer under a cover letter dated August 14, 2007. (Exhibits A-12 and A-13, attached hereto and incorporated herein) The Government has submitted its initial document disclosures under Board Rule 4. Both parties have initiated discovery. No requests for any enlargement of time have been requested by either party.

C. ASBCA No. 56125

ACC filed its Complaint dated August 29, 2007. (Exhibit A-14, attached hereto and incorporated herein) Government counsel has made an appearance.

D. ASBCA No. 56155

ACC filed its Complaint dated October 2, 2007. (Exhibit A-15, attached hereto and incorporated herein) Government counsel had made an appearance. No requests for any enlargement of time have been requested by either party.

## V. SUMMARY OF ARGUMENT

Except for one case before the Court, for reasons explained above, ACC has determined that appealing to the Board is in its best interests. Several claims under the same contract, including the claim under the case before the Court and the claims under all of the appeals before the Board, involve delay and time extensions. The opportunity for conflicting decisions exists, and ACC's schedule and delay evidence, including prospective expert witness analysis and testimony, would have to be presented twice. The interests of justice will be furthered by transfer of this case to the Board. If cases are heard before the Court and the Board, Court and Board resources will be duplicated and wasted. For the same reasons, the

convenience of the parties and witnesses dictates that this one case be transferred from this Court and join the multiple cases now filed before the Board.

## VI. ARGUMENT AND CITATION OF AUTHORITY

### A. The Court's Authority, Guidance, and Discretion

In making a decision on a motion to transfer, the Court's authority and guidance are found in the following language of the Contract Disputes Act of 1978:

> If two or more suits arising from one contract are filed in the United States Court of Federal Claims and one or more agency boards, for the convenience of parties or witnesses or in the interest of justice, the United States Court of Federal Claims may order the consolidation of such suits in that Court or transfer any suits to or among the agency boards involved.

**41 U.S.C. § 609(d)**

Pertinent legislative history elaborates on the statutory language as follows:

> . . . the Court . . ., for the convenience of parties and witnesses, may order the consolidation of suits arising from one contract in the Court . . . or transfer from the Court to . . . agency boards that may be involved. It is the intent of the Committees that splitting of the causes of actions, or suits, under one contract be kept to a minimum both within the Court . . . and within the boards . . . . it is intended that the Court . . . have the same ultimate authority to

> consolidate suits that are split between the Court and the agency boards, but the committees specifically recommend that the Court . . . be sensitive to the reasons why the suits have been split and should not consolidate only for the sake of consolidation . . . . The Court . . ., when reviewing the decision to consolidate, should not arbitrarily take away the contractor's right to his day in court . . . . It is the intent of the section to make available the opportunity to consolidate like suits in one jurisdiction, but this action should weigh the positions of the parties involved.

**S. Rep. No. 1118, 95th Cong. 31, *reprinted in* 1978 U.S. Code Cong. & Ad. News 5235, 5265.**

The Court has broad discretion in deciding whether to transfer a case to the Board. **Joseph Morton Co. v. United States, 757 F.2d 1273, 1280 (Fed. Cir. 1985)**.

Various factors have been considered by the Court in deciding whether to transfer a case to an agency Board, including:

> . . . whether the issues arise from the same contract, whether the issues overlap or are duplicative, where the plaintiff initially filed or appealed its claims, whether either forum has made significant progress in rendering judgment on any claim, how resolution of the matters in separate fora would affect the parties', board's or Court's resources, and whether inconsistent results are likely to arise from actions in separate proceedings.

**Rockwell Automation, Inc. v. United States, 70 Fed. Cl. 114, 126 (2006)** (citations omitted).

### B. Factors for Consideration

We suggest that the following factors weigh in favor of a transfer of this case from the Court to the Board. Therefore, ACC respectfully requests that the Court order this case transferred to the Armed Services Board of Contract Appeals.

#### 1. ACC's Choice of Forum

On June 13, 2007, ACC initiated one matter before the Board and a second, older matter before the Court. At that time, ACC had only one choice if it wished to challenge the CO's decision on the older claim. ACC has filed two other appeals before the Board. ACC intends to take any additional appeal(s) to the Board.

ACC has shown a clear preference for having its claims adjudicated before the Board (if they cannot be resolved short of litigation). Except for the single case before the Court, ACC has determined that it has an exclusive preference for the Board. We urge the Court to strongly consider ACC's preference for one forum over the other. ***Morse Diesel Intern., Inc. v. United States,*** **69 Fed. Cl. 558, 564 (2006).** ACC is the party that will have the burden of proof in most if not all matters before the Board and before the Court.

## 2. Some Issues Overlap or are Duplicative

In the appeals pending before the Board, ACC is claiming delays. In the case before the Court, ACC asserts that the performance period for phase 1 work was 450 days at time of contract award. (Complaint ¶¶ 11-17) The Defendant contends that the performance period for phase 1 work was 360 days and has administered the contract from that perspective. (Complaint ¶ 3) Accordingly, the resolution of the case before the Court will have the effect of either granting or denying a 90-day time extension to the performance period of phase 1 work under the contract.

To that extent, the decision in the case before the Court will affect other delay claims under the contract. All the delays being alleged by ACC should be examined by the Board in a comprehensive manner. ***Giuliani Contracting Co., Inc. v. United States,* 21 Ct. Cl. 81, 83 (1990)**. ACC recognizes that there is the potential for overlap between and among the delays being claimed. ACC is analyzing the various causes of delay and intends to prove the discrete time periods of delay, segregating delay periods and causes. The evidentiary presentation for delay will, of necessity, present alternative scenarios that will allow the decision-maker options if certain delays are proved, or not. Combining the phase 1

performance period claim with the other delay claims will facilitate that showing and decision.

In the event the parties are able to consider resolution of all claims or certain claims short of litigation, the chances of success will be enhanced if all claims are before the Board. When claims are before the Board, the CO retains the authority to settle. When claims are before the Court, settlement authority rests with the U.S. Attorney General in consultation with the contracting agency. Settlement discussions and opportunities are thus burdened with additional layers of bureaucracy.

**3. The Issues Arise from the Same Contract**

This case and all the appeals pending before the Board arise under or relate to the same contract. A number of general facts relevant to this case are the same as those that must be shown before the Board.

**4. The Interests of Justice**

Transferring this case to the Board will promote judicial economy and enhance the interests of justice. Fairness will not be served by requiring ACC to prosecute separate but parallel matters before the Court and before the Board. Resources of the Court, the Board, the parties, and the witnesses will be inefficiently employed if two proceedings instead of one

are required. Resolution of other cases involving other parties appearing before the Court will be delayed while the Court takes time with this matter.

### 5. Convenience of Parties and Witnesses

If this case remains before the Court, ACC's fact witnesses regarding general issues and project chronology will be obliged to appear in both fora, travel to separate hearings, and repeat the same or similar testimony before the Court and before the Board. In addition, ACC must bear the cost of separate but parallel proceedings. The Government will experience, to an extent, the same time and cost impact. While the full extent of the time and cost impacts cannot yet be itemized and calculated, we suggest that the impacts will not be negligible. It is more convenient, less expensive, and less disruptive for the parties and witnesses to appear at the Board during one consolidated hearing.

### 6. The Board Has Made Significant Progress in Processing the Appeals in Comparison with the Court.

In the first appeal filed before the Board (ASBCA No. 56071), the parties have filed the pleadings, ACC has initiated discovery, the Government has made initial document disclosures under Board Rule 4, the Board has asked each party whether a hearing is desired, and the parties have each requested a hearing on the merits. Neither party has requested any enlargement of time for procedural actions.

In the second appeal filed before the Board (ASBCA No. 56125), ACC has filed its Complaint and Government counsel has entered an appearance.

In the third appeal filed before the Board (ASBCA No. 56155), ACC has filed its Complaint, and Government counsel has entered an appearance. Neither party has requested any enlargement of time for procedural actions.

In contrast, in the case before the Court, ACC timely filed its Complaint and Government counsel noticed his appearance at about the time when the Answer would have been due, that is, about sixty (60) days after the Complaint was filed. The Government requested, ACC did not object, and the Court allowed an additional sixty (60) days within which to file the Answer.

We suggest that the Board is on track to convene a hearing at an earlier date than the Court.

## VII. CONCLUSION

For the reasons stated above, this Court should grant the Plaintiff's motion to transfer this case to the Armed Services Board of Contract Appeals and issue an Order to that effect.

DATED this 4th day of October, 2007.

By: /s/ Karl F. Dix
Karl Frederick Dix
(404) 582-8038 Telephone
(404) 688-0671 Facsimile

By: /s/ Steven L. Reed
Steven L. Reed
(404) 582-8020 Telephone
(404) 688-0671 Facsimile

**SMITH, CURRIE & HANCOCK LLP**
2700 Marquis One Tower
245 Peachtree Center Avenue, N.E.
Atlanta, GA 30303-1227
(404) 521-3800 Telephone
(404) 688-0671 Facsimile